138 Nev., Advance Opinion 48

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| AARON LEIGH-PINK; AND TANA EMERSON, Appellants, vs. RIO PROPERTIES, LLC, Respondent. | No. 82572 **FILED** JUN 30 2022 |

Certified question under NRAP 5 concerning the scope of damages under common-law fraudulent concealment and statutory consumer fraud claims. United States Court of Appeals for the Ninth Circuit: Ronald M. Gould and Ryan D. Nelson, Circuit Judges, and Brian M. Cogan, District Judge.[1]

*Question answered.*

Law Office of Robert A. Waller, Jr., and Robert A. Waller, Jr., Cardiff-by-the-Sea, California,
for Appellants.

Cozen O'Connor and Richard Fama, New York, New York; Cozen O'Connor and F. Brenden Coller, Philadelphia, Pennsylvania; Cozen O'Connor and Karl O. Riley, Las Vegas; Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno,
for Respondent.

Gesund & Pailet, LLC, and Keren E. Gesund, Las Vegas,
for Amici Curiae Public Citizen, National Association of Consumer Advocates, National Consumer Law Center, and Public Justice.

---

[1]The Honorable Brian M. Cogan, United States District Judge for the Eastern District of New York, sitting by designation.

22-20731

Jones Lovelock and Stephen A. Davis and Marta D. Kurshumova, Las Vegas,
for Amicus Curiae Legal Aid Center of Southern Nevada, Inc.

---

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, STIGLICH, J.:

This case comes to us as a certified question under NRAP 5 from the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit asks us to determine whether a plaintiff has suffered damages for purposes of common-law fraudulent concealment and NRS 41.600 consumer fraud claims if the defendant's actions caused the plaintiff to purchase a product or service the plaintiff would otherwise not have purchased, even if that product or service's value was at least equal to what the plaintiff paid.

In this opinion, we conclude that a plaintiff who receives the true value of the goods or services purchased has not suffered damages under theories of common-law fraudulent concealment or NRS 41.600.

## BACKGROUND

We accept the facts of the underlying case as stated in the certification order. *See In re Fontainebleau Las Vegas Holdings, LLC*, 127 Nev. 941, 956, 267 P.3d 786, 795 (2011). Appellants Aaron Leigh-Pink and Tana Emerson stayed at respondent Rio Properties, LLC's Rio All-Suite Hotel & Casino in 2017. The Rio comped appellants' room costs but charged appellants a daily $34 resort fee to access telephones, computers, and the

fitness room.[2] Although the Rio had previously received a letter from the Southern Nevada Health District informing it that two guests had contracted Legionnaires' disease and informed past guests of the contamination, the Rio did not share this information with incoming guests, including appellants.

Asserting that they should have been informed of the potential for exposure, appellants brought a class action lawsuit in Clark County District Court, alleging, as relevant here, fraudulent concealment and consumer fraud claims under NRS 41.600. Appellants did not contract Legionnaires' disease, nor did the *legionella* bacteria impede their access to the phones, computers, or fitness room included in the resort fees; instead, they based their claims on the Rio's failure to disclose the presence of the *legionella* bacteria and sought to recover their resort fees. The matter was removed to federal court. The federal district court dismissed the action, determining that the appellants suffered no damages. It concluded that the resort fees did not amount to damages because appellants received access to the amenities the fees covered and thus had received the "benefit of their bargain." *Ames v. Caesars Entm't Corp.*, No.: 2:17-cv-02910-GMN-VCF, 2019 WL 11794277, at *2 (D. Nev. Nov. 26, 2019) (internal quotation marks omitted).

Appellants thereafter appealed to the Ninth Circuit, contending *inter alia* that they would not have stayed at the Rio—and would not have paid the resort fee—had the Rio disclosed the *legionella* outbreak. The Ninth Circuit reversed in part and affirmed in part the district court's dismissal of claims. *See Leigh-Pink v. Rio Props., LLC*, 849 Fed App'x 628

---

[2]The precise amount appellants paid per day in resort fees was $34.01.

SUPREME COURT
OF
NEVADA

3

(9th Cir. 2021). However, it left one issue unaddressed: whether appellants suffered damages for purposes of their claims for fraudulent concealment and consumer fraud under NRS 41.600. The Ninth Circuit concluded that this court's caselaw was unclear on this issue and certified the question for this court's consideration. The question presented is this:

> For purposes of a fraudulent concealment claim, and for purposes of a consumer fraud claim under NRS 41.600, has a plaintiff suffered damages if the defendant's fraudulent actions caused the plaintiff to purchase a product or service that the plaintiff would not otherwise have purchased, even if the product or service was not worth less than what the plaintiff paid?

*Leigh-Pink v. Rio Props., LLC*, 989 F.3d 735, 738 (9th Cir. 2021).

## DISCUSSION

*We decline to rephrase the certified question*

As a factual matter, the Ninth Circuit determined that appellants received the true value of their resort fees. Appellants challenge this determination, arguing that the certified question should be rephrased to take into account their position that they did not in fact receive the true value of their fees, i.e., that the value of the amenities covered by their daily resort fee *in a hotel containing legionella bacteria* was less than $34. The Rio contends that the scope of the certified question is limited to those scenarios in which the product or service received "was not worth less than what the plaintiff paid."

This court "is limited to answering the questions of law posed" by the certifying court. *Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 170, 327 P.3d 1061, 1063 (2014) (internal quotation marks omitted). A certified question permits this court to answer "questions of law of this state which may be determinative of the cause then pending in the certifying court." NRAP 5(a); *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon*, 134 Nev.

SUPREME COURT
OF
NEVADA

4

483, 489 n.5, 422 P.3d 1248, 1253 n.5 (2018). This court has the discretion to rephrase a certified question. *Echeverria v. State*, 137 Nev., Adv. Op. 49, 495 P.3d 471, 474 (2021).

In *Echeverria*, the federal district court certified a question to this court to consider whether Nevada had waived its sovereign immunity from damages liability under federal or state law in a minimum wage action by enacting NRS 41.031(1). *Id*. This court elected to rephrase the certified question to remove the consideration of waiver as it related to state law because the plaintiffs' state-law claims had already been dismissed by the certifying court. *Id*. at 475. Neglecting to do so, this court concluded, would have violated the prohibition against issuing advisory opinions. *See id*.; *see also Capanna v. Orth*, 134 Nev. 888, 897, 432 P.3d 726, 735 (2018) (noting that this court does not have the power to render advisory opinions).

We decline to restate the certified question as appellants request because doing so would improperly go beyond "answering the questions of law posed" by the Ninth Circuit. *See Progressive Gulf*, 130 Nev. at 170, 327 P.3d at 1063.[3] Appellants challenge the Ninth Circuit's factual determination, which we are bound to accept. *See In re Fontainebleau*, 127 Nev. at 956, 267 P.3d at 795. Furthermore, appellants have not established that our consideration of the certified question as framed by the Ninth Circuit poses any risk of rendering an advisory opinion. *See Echeverria*, 137 Nev., Adv. Op. 49, 495 P.3d at 475. We thus move on to addressing the certified question as posed by the Ninth Circuit.

---

[3]Appellants also argue that they should receive relief for unjust enrichment. We do not consider this claim, as it is beyond the scope of the certified question.

SUPREME COURT
OF
NEVADA

*A plaintiff has not been damaged for purposes of common-law fraudulent concealment or consumer fraud under NRS 41.600 when they received the true value of the goods or services they purchased*

*Common-law fraudulent concealment*

We first consider the common-law portion of the certified question: whether a fraudulent concealment claim can be sustained where a plaintiff has received the true value of the goods or services purchased. Appellants present no argument in support of answering this portion in the affirmative. The Rio maintains that this court should respond in the negative because the act of concealment and a showing of damages are separate elements of a fraudulent concealment claim under the common law. Therefore, the Rio contends that a plaintiff seeking to recover under a theory of common-law fraudulent concealment must show not only that a defendant concealed a material fact but also that this act caused the plaintiff cognizable damages.

A plaintiff must demonstrate five elements to establish a prima facie case of fraudulent concealment under Nevada law:

> (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the defendant concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than she would have if she had known the fact; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; (5) and, as a result of the concealment or suppression of the fact, the plaintiff sustained damages.

*Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1485, 970 P.2d 98, 110 (1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001). This court has explained that

Supreme Court
OF
Nevada



> The measure of damages for fraudulent misrepresentation can be determined in one of two ways. The first allows the defrauded party to recover the benefit-of-his-bargain, that is, the value of what he would have if the representations were true, less what he had received. The second allows the defrauded party to recover only what he has lost out-of-pocket, that is, the difference between what he gave and what he actually received.

*Randono v. Turk*, 86 Nev. 123, 130, 466 P.2d 218, 222-23 (1970) (internal quotation marks omitted); *accord Collins v. Burns*, 103 Nev. 394, 398-99, 741 P.2d 819, 822 (1987)[1]

In *Collins*, a family-owned business misrepresented its profitability to prospective purchasers. 103 Nev. at 396-97, 741 P.2d at 820-21. The purchasers, relying on the information provided by the family, bought the business only to find out that the figures they reviewed were grossly inflated. *Id.* at 396, 741 P.2d at 820. The purchasers alleged that the family had fraudulently misrepresented the business's finances. *Id.* This court determined that the purchasers were entitled to damages equaling their out-of-pocket expenses: "the difference between the amount they paid to the respondents and the actual value of the business at the time of the sale." *Id.* at 399, 741 P.2d at 822.

This court also considered a fraudulent concealment claim in *Hanneman v. Downer*, 110 Nev. 167, 871 P.2d 279 (1994). There, the defendant sold her home to the plaintiffs, who later discovered that over four acres of the property belonged to the federal government. *Id.* at 171,

---

[1]Nevada law treats fraudulent concealment claims similarly to fraudulent misrepresentation claims. *See Poole v. Nev. Auto Dealership Invs., LLC*, 135 Nev. 280, 288 n.3, 449 P.3d 479, 485 n.3 (Ct. App. 2019) (holding "that failure to disclose a fact is equivalent to affirmative representation of that fact's nonexistence").

871 P.2d at 281. The plaintiffs sued the defendant for, among other claims, fraudulent misrepresentation. *Id*. at 171, 871 P.2d at 282. This court determined that the plaintiffs were entitled to out-of-pocket damages that reflected the difference in the value of the property that the plaintiffs received (i.e., the relative worth of the portion of the land not owned by the federal government) when subtracted from the value of the property as it was represented to them. *Id*. at 172-73, 871 P.2d at 283.

Other state high courts have held that a plaintiff bringing a fraudulent concealment claim must demonstrate cognizable damages. In *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y. 1999), New York's highest court held that "an act of deception, entirely independent or separate from any injury, is not sufficient to state a cause of action under a theory of fraudulent concealment."[5] *Id*. at 898. The consumers in *Small* alleged they would not have bought cigarettes had they known that nicotine was highly addictive. *Id*. However, they did not attempt to recover damages for health issues that they may have incurred as a result of their addiction to cigarettes. *Id*. They only sought to recover the price they paid for the cigarettes, which the court rejected as an unavailing "deception as injury" theory. *Id*.

*Brzoska v. Olson* stands for a similar proposition as *Small*. *Brzoska* involved dental patients who asserted claims of fraudulent misrepresentation against the estate of their former dentist who concealed his HIV-positive status. 668 A.2d 1355 (Del. 1995). These patients sought damages for, *inter alia*, reimbursement of the fees they paid to the dentist.

---

[5]The *Small* court also rejected the consumers' deceptive trade practice claim under New York's analog to the Nevada Deceptive Trade Practices Act (NDTPA) because they were not able to demonstrate actual or pecuniary harm. *Id*.

*Id.* at 1359. None of the patients contracted the HIV virus. *Id.* at 1367. The Delaware Supreme Court noted that recovery for fraudulent misrepresentation is limited to "those damages which are the direct and proximate result of the false representation consisting of the loss of bargain or actual out of pocket losses." *Id.* Since the plaintiffs could not demonstrate they were injured by the dentist's health status and because there was no showing that the dentist performed dental services on the plaintiffs in a deficient manner, the *Brzoska* court determined that the plaintiffs did not suffer any compensable damages. *Id.*

This survey of caselaw is clear: a common-law fraudulent concealment claim requires a plaintiff to demonstrate that they either did not receive the benefit of the bargain or show out-of-pocket losses caused by the defendant's alleged misrepresentation. *See id.; Hanneman,* 110 Nev. at 172-73, 871 P.2d at 283; *Collins,* 103 Nev. at 399, 741 P.2d at 822; *Small,* 720 N.E.2d at 898. An act of concealment does not, in and of itself, lead to a cognizable injury under the common law; instead, a corresponding showing that such concealment caused the plaintiff cognizable damages is required. *See Dow Chem.,* 114 Nev. at 1485, 970 P.2d at 110 (establishing that the plaintiff must demonstrate that they sustained damages "*as a result of* the concealment or suppression" (emphasis added)); *see also Small,* 720 N.E.2d at 898 (similar). Where a plaintiff received the value of their purchase, we conclude that they cannot demonstrate that they did not receive the benefit of their bargain or show any out-of-pocket losses, because the value of the goods or services they received is equal to the value that they paid. *See Randono,* 86 Nev. at 130, 466 P.2d at 222-23; *see also Brzoska,* 668 A.2d at 1367 (determining that the plaintiffs' claim failed because they could not demonstrate that the defendant performed deficient services). Here, because appellants received the full value of the amenities

Supreme Court
of
Nevada

9

covered by their resort fee, they did not suffer any damages. We therefore answer this part of the certified question in the negative.

*Consumer fraud under NRS 41.600*

Having answered the common-law portion of the certified question, we now consider whether a consumer fraud claim under NRS 41.600 may be sustained where a party has received the true value of the goods they purchased. We conclude that the party may not, for the reasons that follow.

This court first looks to the plain language of a statute when interpreting a statutory provision. *Clay v. Eighth Judicial Dist. Court*, 129 Nev. 445, 451, 305 P.3d 898, 902 (2013). "When presented with a question of statutory interpretation, the intent of the legislature is the controlling factor . . . ." *Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983). Where a statute is unambiguous, the court does not go beyond its plain language to divine legislative intent. *Id.*

NRS 41.600(1) provides a cause of action to victims of consumer fraud. It defines a deceptive trade practice as outlined in the NDTPA, codified in NRS Chapter 598, as one type of consumer fraud. NRS 41.600(2)(e). A person who knowingly fails to disclose a material fact related to the sale of a good or service has engaged in a deceptive trade practice. NRS 598.0923(1)(b). In a consumer fraud action, "[i]f the claimant is the prevailing party, the court shall award the claimant . . . [a]ny damages that the claimant has sustained." NRS 41.600(3)(a).

The plain language of NRS 41.600(3)(a) counsels this court to conclude that a plaintiff who has suffered no injury has not been damaged under the statute. *Cf. Clay*, 129 Nev. at 451, 305 P.3d at 902. NRS 41.600(3)(a) permits a plaintiff to recover any damages they have "sustained." To "sustain," as in a harm, is "[t]o undergo; suffer." *Sustain*,

*Black's Law Dictionary* (11th ed. 2019). The United States Supreme Court has defined damages as "the compensation which the law will award for an injury done." *Scott v. Donald*, 165 U.S. 58, 86 (1897). Combining these definitions, NRS 41.600(3)(a) permits the plaintiff to recover compensation for the injuries they have suffered as a result of the defendant's conduct. Where, as here, the plaintiffs assert only economic injury but have received the true value of their goods or services, we determine that the plaintiffs have not been injured and thus have not "sustained" any damages by the defendant's conduct under NRS 41.600(3)(a).

Our reading of NRS 41.600(3)(a) also has the salutary purpose of coupling the statutory consumer fraud understanding of damages with this court's determination of damages at common law. *See Samantar v. Yousuf*, 560 U.S. 305, 320 (2010) ("The canon of construction that statutes should be interpreted consistently with the common law helps us interpret a statute that clearly covers a field formerly governed by the common law.") To be sure, "[s]tatutory offenses that sound in fraud are separate and distinct from common law fraud." *Betsinger v. D.R. Horton, Inc.*, 126 Nev. 162, 166, 232 P.3d 433, 436 (2010). And "the NDTPA is a remedial statutory scheme" that should be afforded a liberal construction. *See Poole*, 135 Nev. at 286-87, 449 P.3d at 485; *Welfare Div. of State Dep't of Health, Welfare & Rehab. v. Washoe Cty. Welfare Dep't*, 88 Nev. 635, 637, 503 P.2d 457, 458 (1972). But such a liberal construction must be faithful to the first principles of statutory interpretation. And so where, as here, the plain language of a statutory term is in accord with the term's definition at common law, we elect to interpret them similarly.

The Ninth Circuit draws our attention to the United States District Court for the District of Nevada's decision in *Cruz v. Kate Spade & Co.*, that reached a contrary result. No.: 2:19-cv-00952-APG-BNW, 2020 WL 5848095 (D. Nev. Sept. 30, 2020). While *Cruz* is merely persuasive, rather than binding authority, we take this opportunity to consider it here. *Cf. Lagares v. Camdenton R-III Sch. Dist.*, 68 S.W.3d 518, 528 (Mo. Ct. App. 2001) (determining that federal cases interpreting Missouri law are persuasive); *Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 667 n.4 (Tex. App. 2010) (affirming the same proposition under Texas law).

*Cruz* held that a plaintiff's claim under NRS 41.600 may survive a motion to dismiss even when they received the true value of the goods they purchased. 2020 WL 5848095, at *5. The plaintiff in *Cruz* alleged that Kate Spade listed items on sale, when in actuality the items were never sold for the reference price listed on the clothing tags. *Id.* The plaintiff contended "that she did not get the deal she thought she was getting" and that she would not have purchased the items if she had "known their true market value." *Id.* at *1. However, the plaintiff did not allege that the items she purchased were worth less than what she paid. *Id.* at *5. The district court determined that the plaintiff had sufficiently alleged harm to survive a motion to dismiss because the plaintiff "alleged she would not have purchased the items but for the reference pricing." *Id.* It further noted that a consumer does not have to allege that "her items are worth less than what she paid for them . . . to survive a motion to dismiss." *Id.*

*Cruz* is not on point. It did not analyze NRS 41.600(3)(a) and merely relied on NRS 41.600(1)'s classification of a "victim" to reach its holding. *See Cruz*, 2020 WL 5848095, at *5. *Cruz* therefore did not consider the meaning of "sustained" and "damages" as used in NRS 41.600(3)(a), and

SUPREME COURT
OF
NEVADA

so its applicability in assisting this court to interpret these terms is limited. To the extent *Cruz* would counsel a different result here, we reject it for the reasons stated above. As a result, our analysis is unchanged, and we respond to the certified question's second inquiry in the negative.[6]

## CONCLUSION

We answer this certified question as follows: a plaintiff is not damaged for purposes of a common-law fraudulent concealment claim or an NRS 41.600 consumer fraud claim when they receive the true value of the good or service purchased.

_____, J.
Stiglich

We concur:

_____, C.J.
Parraguirre

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Silver

_____, J.
Herndon

---

[6]Many other jurisdictions have understood their analogs to the NDTPA similarly. *See, e.g., Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253 (1st Cir. 2010) (concluding that a consumer was not damaged under Massachusetts law where she could not demonstrate economic damages); *Mewhinney v. London Wineman, Inc.*, 339 S.W.3d 177, 181 (Tex. App. 2011) (establishing that the appropriate measure of damages under Texas's analog to the NDTPA is "the difference between the amount the company paid and the value it received").